USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/25/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRATEEK SHARMA,

                 Plaintiff,

  -against-

MARY J. D'SILVA, et al.,

                 Defendants.

No. 14-cv-6146 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Prateek Sharma is a prisoner at Sing Sing Correctional Facility ("Sing Sing") and brings this action *pro se*, pursuant to 42 U.S.C. § 1983, against Defendants Doctor Reinhard Willim, Doctor Allan Jacobson, Doctor William Dawson, Doctor Britta Viereckl-Prast,[1] Anthony Annucci, Brian Fischer, Michael Capra, Phillip Heath, Maryann Genovese, and Dana Gage (collectively, "Defendants"). Plaintiff alleges that Defendants, medical staff at Sing Sing and employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), were deliberately indifferent to his serious medical needs. Before the Court is Defendants' motion to dismiss Plaintiff's complaint.[2] For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts are taken from Plaintiff's complaint filed on July 30, 2014 (the "Complaint") (ECF No. 1) and are accepted as true for the purposes of this motion. In 2003,

---

[1] The Complaint mistakenly refers to Dr. Viereckl-Prast as Dr. Pratt.

[2] Defendants indicated in their moving brief (ECF No. 43) that they are not moving on behalf of Defendants Mary D'Silva, DDS ("Defendant D'Silva") and Carl J. Koenigsmann, MD, ("Defendant Koenigsmann") because "the allegations against them cannot be meaningfully addressed in a motion to dismiss." (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mot.") at 1, n. 1.)

Copies mailed/faxed 1/25/2016

Chambers of Nelson S. Román, U.S.D.J.

Plaintiff fractured his jaw in two different places while playing basketball at Sing Sing.  (Compl. ¶ 1.)  Plaintiff was sent to Westchester County Hospital for surgery, where doctors wired his mouth shut and placed a plate in his chin.  (*Id*. ¶¶ 2–3.)  After the wires were removed, Plaintiff's bite felt awkward, and he made numerous complaints to his assigned dentist, Defendant Doctor Reinhard Willim ("Defendant Willim").  (*Id*. ¶¶ 5–6.)  Defendant Willim grinded a lower tooth in 2003 and two more front teeth in 2011.  (*Id*. ¶ 7.)  After the grinding, Plaintiff still experienced pain in his jaw and his bite felt tilted on the left side.  (*Id*. ¶ 8.)

Beginning in 2011, Plaintiff experienced severe headaches due to the awkwardness of his bite.  (*Id*. ¶ 10.)  Plaintiff complained to Defendant Willim, and Defendant Willim grinded two teeth on the right side of Plaintiff's mouth to even out Plaintiff's bite.  (*Id*. ¶¶ 11–12.)  On or about December 12, 2011, Plaintiff complained to Defendant Willim that the grinding of Plaintiff's teeth on the right side of his mouth made his tongue feel out of place.  (*Id*. ¶ 13.)  Defendant Willim suggested that two teeth be extracted to correct the bite, and the extraction was performed on or about December 14, 2011 at Westchester Medical Center.  (*Id*. ¶ 14.)

On February 2, 2012, Plaintiff was informed by Defendant Willim that he was no longer Plaintiff's assigned dentist and that Plaintiff's dental care had been transferred to Defendant Doctor Allan Jacobson ("Defendant Jacobson").  (*Id*. ¶ 17.)  Plaintiff explained Defendant Willim's prior treatment of his jaw issues to Defendant Jacobson.  (*Id*. ¶ 18.)  Defendant Jacobson recommended that Plaintiff needed braces but explained that the State of New York would not provide them due to the expense.  (*Id*. ¶ 19.)  Though Plaintiff consented to Defendant Jacobson grinding only two of his teeth, Defendant Jacobson instead ground 12 of Plaintiff's teeth.  (*Id*. ¶¶ 20–21.)  Defendant Jacobson shaved off a substantial part or virtually all of those 12 teeth, (*id*. ¶ 22) which created the following new problems for Plaintiff: his bite became more

misaligned; his front upper teeth bang into his lower front teeth; he has more difficulty eating and speaking; a back tooth cracked due to greater pressure placed on it from the upper teeth; his tongue feels out of place; he developed chronic inflammation of his tonsils and enlargement of the adenoids; his jaw muscles are tense; and he suffers from severe insomnia.  (*Id.* ¶ 25.)

On February 8, 2012, Defendant Willim took impressions of Plaintiff's teeth to fit Plaintiff for a mouth guard.  (*Id.* ¶ 26.)  Plaintiff contends that Defendant Willim agreed that Defendant Jacobson ground too many of Plaintiff's teeth.  (*Id.* ¶ 27.)  Defendant Willim advised Plaintiff that he required reconstructive surgery and braces, which would cost between $20,000 and $25,000; however, DOCCS would provide neither surgery nor braces due to budgetary concerns.  (*Id.* ¶ 28.)  Defendant Willim further advised Plaintiff that he needed to seek treatment in an outside clinic.  (*Id.* ¶ 29.)  On March 1, 2012, Defendant Willim told Plaintiff that he could not do "anything" further to assist him with his treatment.  (*Id.* ¶ 30.)

On September 20 and September 25, 2012, Defendant Willim encouraged Plaintiff to stay strong.  (*Id.* ¶ 31.)  On December 28, 2012, Defendant Willim informed Plaintiff that he would speak with Defendant Jacobson and Plaintiff's prison physician about Plaintiff's symptoms and discuss the possibility of sending Plaintiff to an outside facility for treatment.  (*Id.* ¶ 32.)  On March 4, 2013, Plaintiff was seen by Defendant Doctor William Dawson, statewide assistant director of dental services ("Defendant Dawson") and Defendant Doctor Britta Viereckl-Prast, regional dental director of DOCCS ("Defendant Viereckl-Prast"), who referred Plaintiff to an oral surgeon.  (*Id.* ¶ 33.)  Plaintiff was seen by an oral surgeon, Dr. Moore, on April 9, 2013, who ordered an MRI of Plaintiff's mouth.  (*Id.* ¶ 34.)  Based upon the results of the MRI, Dr. Moore referred Plaintiff to be seen by a prosthodontist.  (*Id.* ¶ 36.)  On August 8, 2013,

Defendant Jacobson notified Plaintiff that his approval to be seen by a prosthodontist was still pending. (*Id*. ¶ 38.)

On March 11, 2013, Dr. Alam of Sing Sing approved Plaintiff to be examined by an ear, nose, and throat specialist in connection with his inflamed tonsils and adenoids hypertrophy. (*Id*. ¶¶ 44–45.) Plaintiff was examined by Dr. Hemmerdinger, an ear, nose, and throat specialist, who advised Plaintiff he had tongue congestion and referred Plaintiff to an oral surgeon. (*Id*. ¶ 46.) On October 16, 2013, Plaintiff was seen by Defendant D'Silva, who informed Plaintiff he would not be seen by a prosthodontist and requested that Plaintiff ask his family members to cease writing to her and other DOCCS officials in Albany. (*Id*. ¶ 40.) On January 31, 2014, Defendant Jacobson told Plaintiff that he could only give him pain killers. (*Id*. ¶ 48.) On March 18, 2014, Plaintiff was seen by a gastro-intestinal specialist who confirmed that Plaintiff's adenoids were enlarged and referred Plaintiff to an ear, nose, and throat specialist as well as the dental department. (*Id*. ¶ 50.) Despite this referral, Defendant Jacobson in the dental department informed Plaintiff that he could not do anything for him. (*Id*. ¶ 51.) On May 19, 2014, Plaintiff again was examined by Dr. Hemmerdinger, who advised Plaintiff his tonsils were inflamed and that he should be seen by a prosthodontist and oral surgeon for reconstructive surgery. (*Id*. ¶ 52.)

Plaintiff lodged various complaints to prison officials regarding his pain, symptoms, and treatment by Defendant Jacobson. On September 11, 2013, Plaintiff complained to Defendant Michael Capra, Superintendent of Sing Sing ("Defendant Capra"), who informed Plaintiff that he would speak with Defendant Dana Gage, medical doctor at Sing Sing ("Defendant Gage"). (*Id*. ¶ 54.) Plaintiff complained verbally to Defendant Phillip Heath, former Superintendent of Sing Sing ("Defendant Heath") on February 23, 2012; Dr. Alam on more than 20 occasions; Dr. Ezikel on October 26, 2012; and Defendant Willim on 15 occasions about medical and dental

4

problems stemming from Defendant Jacobson.  (*Id.* ¶ 55.)  Plaintiff complained in writing to Defendant Heath; Defendant Brian Fischer, former commissioner of DOCCS ("Defendant Fischer"); Defendant Anthony Annucci, Commissioner of DOCCS ("Defendant Annucci"); Defendant D'Silva; the Dental Department of DOCCS; Defendants Viereckl-Prast and Dawson; Defendant Koenigsmann; Defendant Maryann Genovese, medical doctor formerly employed at Sing Sing ("Defendant Genovese"); Dr. Alam; Defendant Gage; and Defendant Capra.  (*Id.* ¶ 56.)  Additionally, on March 28, 2012, the Legal Aid Society of New York wrote to Defendant Heath requesting that Plaintiff be examined by a dentist familiar with Plaintiff's condition.  (*Id.* ¶ 57.)  On June 18, 2012, the Legal Aid Society wrote to Acting Superintendent Keyser on Plaintiff's behalf requesting that Plaintiff be seen by a specialist.  (*Id.* ¶ 58.)  On October 11, 2012 and November 29, 2012 New York State Senator Tony Avella wrote to Defendant Fischer on Plaintiff's behalf regarding Defendant Willim's recommendation that Plaintiff be examined by a specialist.  (*Id.* ¶ 59.)  Senator Avella also wrote to Defendant Annucci on July 31, 2013 on Plaintiff's behalf.  (*Id.* ¶ 60.)  Plaintiff's parents and wife wrote to Defendants, (*id.* ¶ 61) and Plaintiff submitted formal grievances to the Inmate Grievance Resolution Committee at Sing Sing.  (*Id.* ¶ 62.)  Plaintiff also reported to sick call on numerous occasions, (*id.* ¶ 63.) and the emergency room on at least four occasions.  (*Id.* ¶ 64.)

In response, Defendant Heath wrote to Plaintiff that the dental staff addressed Plaintiff's concerns by requesting a night guard for him to wear.  (*Id.* ¶ 67.)  Defendant Capra informed Plaintiff in writing that he forwarded Plaintiff's letters to Defendant Gage.  (*Id.* ¶ 68.)  Neither Defendant Gage nor Defendant Genovese did anything to ensure Plaintiff was seen by a prosthodontist.  (*Id.* ¶ 69.)  Defendants Dawson and Viereckl-Prast did not respond to Plaintiff's letters or facilitate the specialty treatment recommended by Dr. Moore.  (*Id.* ¶ 70.)  Defendant

Jacobson did not assist Plaintiff in being examined by a prosthodontist, nor did Defendant Willim. (*Id*. ¶¶ 71–72.) Defendant Koenigsmann responded to Plaintiff's dental issues in short letters containing purportedly false statements. (*Id*. ¶ 73.) Defendant D'Silva denied, without justification, the referral of Plaintiff to a prosthodontist. (*Id*. ¶ 84.) Defendant Fischer responded to Senator Avella's letter notifying the Senator that Plaintiff received medication for his chronic pain, and Defendant Annucci confirmed in a letter to Senator Avella that Plaintiff was referred to a prosthodontist but Defendant D'Silva did not or would not approval the referral. (*Id*. ¶¶ 86–87.) To date, the only treatment Plaintiff has received for his condition is a night guard. (*Id*. ¶ 88.)

## STANDARD ON A MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). A court should accept non-conclusory allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008). "[T]he duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v.*

*MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998)).

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The court should read *pro se* complaints "to raise the strongest arguments that they suggest." *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006). Even so, "pro se plaintiffs . . . cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (internal quotation marks omitted). Dismissal is justified where "the complaint lacks an allegation regarding an element necessary to obtain relief," and the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations and alterations omitted).

## DISCUSSION

Plaintiff's present cause of action pursuant to 42 U.S.C. § 1983 relates to Defendants' alleged failure to properly treat Plaintiff's dental condition beginning in February 2012 during his incarceration at Sing Sing. The Cruel and Unusual Punishments clause of the Eighth Amendment forms the basis of a convicted prisoner's claim that he or she is not being provided adequate medical care. *Est v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (citing *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). An Eighth Amendment claim of inadequate medical care requires a demonstration of "deliberate indifference to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

To sustain a claim of deliberate indifference, a plaintiff must allege that (1) objectively, the deprivation of adequate medical care was sufficiently serious, and (2) subjectively, defendants acted with deliberate indifference.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Salahuddin v. Goord*, 467 F.3d 263, 279–81 (2d Cir. 2006).  "The objective component requires that 'the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.'" *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)) (internal quotation marks omitted).[3]  For the subjective prong, the official charged with deliberate indifference must act with a "sufficiently culpable state of mind."  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  A prison official may only be found liable if "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  "Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—'an act or a failure to act by [a] prison doctor that evinces a conscious disregard of a substantial risk of serious harm.'" *Hill*, 657 F.3d at 123 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)) (internal quotation marks omitted).  *See also Hathaway*, 99 F.3d at 553 (observing that "negligent malpractice do[es] not state a claim of deliberate indifference").  "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).  Finally, "[b]ecause Section 1983 imposes liability only upon those who actually cause a deprivation of rights, personal involvement of defendants in alleged

---

[3] For the limited purpose of their motion, Defendants concede that Plaintiff's dental condition constitutes a serious medical condition (objective prong).  (Defs.' Mot. at 7.)

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999) (citation and internal quotation marks omitted).

As to each defendant, therefore, Plaintiff is required to allege personal involvement in the actions demonstrating deliberate indifference to his dental needs.  Defendants contend that Plaintiff's allegations with respect to Defendants Willim, Jacobson, Dawson, and Viereckl-Prast demonstrate that they actively treated his medical issues and, at best, amount to state claims for dental malpractice.  (Defs.' Mot. at 1-2.)  As for Defendants Annucci, Fischer, Capra, Heath, Genovese, and Gage, Defendants argue that Plaintiff fails to allege sufficient personal involvement to state § 1983 claims.  (*Id.* at 2.)  For the following reasons, Plaintiff's allegations of deliberate indifference are sufficient with respect to Defendant Willim and Defendant Jacobson and insufficient with respect to Defendant Dawson, Defendant Viereckl-Prast, Defendant Annucci, Defendant Fischer, Defendant Capra, Defendant Heath, Defendant Genovese, and Defendant Gage.

I.     **Claims Against Defendants Willim, Jacobson, Dawson, and Viereckl-Prast**

    **A.  Defendant Willim**

Plaintiff's allegations with respect to Defendant Willim appear to center on Defendant Willim's alleged failure to ensure Plaintiff was examined by a specialist (prosthodontist) after examining Plaintiff on several occasions and discussing Plaintiff's condition with him. (Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp.") at 3.)  The Complaint alleges that Defendant Willim, in response to Plaintiff's complaints that his bite felt awkward, ground two of Plaintiff's teeth.  (Compl. ¶¶ 5–7.)  Defendant Willim ground two more of Plaintiff's teeth in 2011 when Plaintiff informed Defendant Willim that he was experiencing severe headaches.  (*Id.* ¶¶ 10–12.)  Defendant Willim then referred Plaintiff to Westchester

Medical Center to have two teeth extracted.  (*Id*. ¶ 14.)  Though Defendant Willim ceased being Plaintiff's assigned dentist on February 2, 2012 (*id*. ¶ 17), he examined Plaintiff a few days later and advised him that he required reconstructive surgery and braces, neither of which would be provided for by the DOCCS.  (*Id*. ¶ 28.)  Plaintiff additionally alleges that Defendant Willim told Plaintiff that he agreed Defendant Jacobson ground Plaintiff's teeth improperly.  (*Id*. ¶¶ 27–28.) Defendant Willim notified Plaintiff that he would need to seek treatment through an outside clinic (*id*. ¶ 29) and informed Plaintiff that he would speak to Defendant Jacobson and Plaintiff's prison physician about sending Plaintiff to an outside facility.  (*Id*. ¶ 32.)

Construing the facts in the light most favorable to Plaintiff, as is required by the Court at this juncture, it appears Defendant Willim was aware that Plaintiff faced a substantial risk of harm absent reconstructive surgery, but "he disregarded that risk recklessly when he failed to make an appointment for [Plaintiff] to see a specialist." *Ciaprazi v. Jacobson*, No. 13-cv-4183 (PAC) (KNF), 2014 WL 2751023, at *11 (S.D.N.Y. June 17, 2014) *report and recommendation adopted as modified*, No. 13-cv-4813 (PAC) (KNF), 2014 WL 5050591 (S.D.N.Y. Sept. 23, 2014), *leave to appeal denied* (Jan. 8, 2015).[4]  In any event, even if the Court were to conclude that Defendant Willim's promise to speak with Defendant Jacobson and Plaintiff's prison physician about sending Plaintiff to an outside facility constituted a referral, it nevertheless appears that Defendant Willim may have acted with deliberate indifference in treating Plaintiff. In *Hathaway v. Coughlin*, the Second Circuit declined to adopt a rule that a general practitioner need only refer a patient to a specialist to avoid liability for deliberate indifference.  37 F.3d at 68.  There, the court reasoned that the general practitioner "personally saw and treated [the

---

[4] Defendants argue that Plaintiff fails to allege that Defendant Willim had authority to approve Plaintiff's treatment by a specialist.  (Defs.' Mot. at 7.)  Defendants cite no case law in support of the proposition that a plaintiff must explicitly allege a doctor has authority to approve a referral, and the Court declines to adopt such a high bar to pleading a claim for deliberate indifference to medical needs, particularly for a *pro se* plaintiff.

patient] on the majority of the numerous occasions on which [the patient] complained about pain. As such, [the doctor] was the official most familiar with [the patient's] condition, even as a general practitioner." *Id*.  While the Second Circuit noted that the doctor's arguments regarding his status as a general practitioner may ultimately persuade a jury that he did not violate the plaintiff's Eighth Amendment rights, the court held that such a determination was properly left for the jury.  Here too, the Court finds that whether Defendant Willim—Plaintiff's assigned dentist who examined him on numerous occasions and was aware of Plaintiff's severe pain—acted with deliberate indifference towards Plaintiff cannot be resolved at this stage of the litigation.  Plaintiff has alleged sufficiently a claim of deliberate indifference as against Defendant Willim to survive the Defendants' motion to dismiss.

### B. Defendant Jacobson

Plaintiff alleges that Defendant Jacobson shaved off a substantial part or virtually all of 12 of Plaintiff's teeth, despite the fact that Plaintiff consented to the shaving of only 2 teeth. (Compl. ¶¶ 20–22.)  The Complaint further states that the shaving aggravated certain preexisting conditions as well as created new medical issues for Plaintiff.  (*Id*. ¶ 25.)  Defendants contend, on the other hand, that Plaintiff's claim against Defendant Jacobson amounts to nothing more than a disagreement over the nature of his treatment, which is at best a claim for dental malpractice.  (Defs.' Mot. at 8.)[5]

"Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Chance*, 143 F.3d at 703.  "While 'mere medical malpractice' is not tantamount to deliberate indifference, certain instances of

---

[5] In his opposition brief, Plaintiff asserts that this is not a case of mere *disagreement* over medical treatment.  (Pl.'s Opp. at 10.)  As Plaintiff astutely points out, based upon the facts alleged in the Complaint, there was an *agreement* between Plaintiff and medical personnel as to the proper course of treatment—examination by a prosthodontist.

medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Hathaway*, 99 F.3d at 553 (quoting *Farmer*, 511 U.S. at ——, 114 S.Ct. at 1980.).  In the present action, Plaintiff alleges that Defendant Willim confirmed Plaintiff's belief that Defendant Jacobson over-shaved Plaintiff's teeth.  (Compl. ¶ 27.)  One dentist's medical opinion that another dentist's course of treatment aggravated, rather than alleviated, a patient's medical condition certainly tends to support a finding of deliberate indifference. *See Hemmings v. Gorczyk*, 134 F.3d 104, 109 (2d Cir. 1998) (holding that plaintiff could prove requisite culpable state of mind to allege deliberate indifference claim by pointing to the fact that nurse "aggravated his condition by allegedly taking away one of his crutches"); *Shepherd v. Fischer*, No. 9:10-cv-1524 (TJM) (DEP), 2015 WL 1246049, at *10 (N.D.N.Y. Feb. 23, 2015) *report and recommendation adopted*, No. 9:10-cv-1524, 2015 WL 1275298 (N.D.N.Y. Mar. 18, 2015) (holding that defendants "did aggravate plaintiff's medical conditions" and "were deliberately indifferent to plaintiff's medical needs").  Though further development of the factual record may reveal that Defendant Jacobson's treatment of Plaintiff was in fact the product of sound medical judgment, the Court finds that at this time Plaintiff has adequately stated a cause of action as against Defendant Jacobson.

### C.  Defendants Dawson and Viereckl-Prast

Plaintiff's allegations against Defendants Dawson and Viereckl-Prast consist of the following: (1) On May 4, 2013, they examined Plaintiff and referred him to an oral surgeon; (2) they received letters from Plaintiff concerning Defendant Jacobson's treatment and failed to respond; and (3) they failed to facilitate specialty treatment recommended by Dr. Moore.  The alleged failure to respond to Plaintiff's letters does not give rise to liability under § 1983.  *See*

*Rivera v. Goord*, 119 F. Supp. 2d 327, 344 (S.D.N.Y. 2000) (collecting cases).  Therefore, the question for the Court is whether Defendants' failure to facilitate treatment by a second specialist after referring Plaintiff to an initial specialist constitutes deliberate indifference.  Unlike Defendant Willim and Defendant Jacobson, whom Plaintiff alleges never formally referred Plaintiff to a prosthodontist, Defendant Dawson and Defendant Viereckl-Prast referred Plaintiff to an oral surgeon after examining him.  "Referr[al] for specialist care" constitutes an "appropriate treatment action[]."  *Harrington v. Mid-State Corr. Facility*,   No. 09-cv-85 (TJM) (DRH), 2010 WL 3522520, at *11 (N.D.N.Y. May 21, 2010) *report and recommendation adopted*, No. 09-cv-85 (TJM) (DRH), 2010 WL 3522516 (N.D.N.Y. Sept. 2, 2010) (citing *Dean v. Coughlin*, 804 F.3d 207, 215 (2d Cir. 1986)).  In light of the fact that neither of these defendants was Plaintiff's primary dentist or primary treating physician, the Court finds that they were not under an obligation to make an unending number of referrals for specialist treatment on Plaintiff's behalf.  The facts alleged in the Complaint with regard to Defendant Dawson and Defendant Viereckl-Prast simply do not support the claims that these defendants deliberately disregarded an excessive risk to Plaintiff's safety.  Accordingly, the claims against Defendant Dawson and Defendant Viereckl-Prast are dismissed.

## II.    Claims Against Defendants Annucci, Fischer, Capra, Heath, Genovese, and Gage

Plaintiff's Section 1983 claims as alleged against Defendants Annucci, Fischer, Capra, Heath, Genovese, and Gage are generally premised upon their purported failures to properly address his letters detailing his dental issues.  To successfully allege Section 1983 liability, a plaintiff must demonstrate "personal involvement" and cannot merely rely upon an individual's position of authority.  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (holding that liability "requires a showing of more than the linkage in the prison chain of command") (citing *Williams*

*v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.

1973)).  "The personal involvement of a supervisory defendant may be shown by evidence that:

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant,

after being informed of the violation through a report or appeal, failed to remedy the wrong, (3)

the defendant created a policy or custom under which unconstitutional practices occurred, or

allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in

supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited

deliberate indifference to the rights of inmates by failing to act on information indicating that

unconstitutional acts were occurring."  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

        With respect to the second *Colon* factor, courts in this circuit appear to be split over

whether a prison official's receipt of a grievance letter from an inmate sufficiently establishes

personal involvement.  *See Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010)

("Courts in the Second Circuit are divided on whether a supervisor's 'review and denial of a

grievance constitutes personal involvement in the underlying alleged unconstitutional act.'"

(quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009)); *compare Rivera*, 119 F.

Supp. 2d at 344 (holding that plaintiff's assertions that he wrote to certain defendants regarding

his medical condition and those complaints were ignored "are insufficient to hold these

[defendants] liable under § 1983") (collecting cases) *and Warren v. Goord*, 476 F. Supp. 2d 407,

413 (S.D.N.Y. 2007) (concluding that denial of grievance letter does not establish personal

involvement) *with Hall v. Artuz*, 954 F. Supp. 90, 95 (S.D.N.Y. 1997) (holding that defendants'

awareness of deprivation of medical care, vis-à-vis letters from plaintiff, sufficiently establishes

personal involvement at the summary judgment stage) *and Eldridge v. Williams*, No. 10-cv-0423

(LTS), 2013 WL 4005499, at *5 (S.D.N.Y. July 30, 2013) ("A defendant's personal receipt of a

14

complaint or letter and subjective awareness of the alleged unconstitutional conditions may be one factor that helps establish personal involvement.").

To reconcile the split among courts in this Circuit, this Court finds support in examining (i) the precise nature of a defendant's response to a grievance letter and (ii) the nature of the defendant's employment (including the degree of oversight over the patient associated with the defendant's position).  Relying on *Burton*, the court in *Mateo* noted that the "*degree* of response to an inmate's grievance—for example, between summarily denying a grievance and denying it in a detailed response that specifically addressed the plaintiff's allegations," may be "persuasive" in discerning personal involvement.  682 F. Supp. 2d at 430.  "A supervisor's detailed, specific response to a plaintiff's complaint suggests that the supervisor has considered the plaintiff's allegations and evaluated possible responses."  *Id*. at 430–31 (citations omitted).  Additionally, whether the individual defendant is a medical prison official or non-medical prison official may have some bearing on the level of response necessary to ensure that individual does not act with deliberate indifference.  *See Hernandez v. Keane*, 341 F.3d 137, 148 (2d Cir. 2003) (holding that the prison superintendent (non-medical prison official) did not act with deliberate indifference when he delegated responsibility for investigating an inmate's medical complaints to other prison staff); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) ("[W]e can see no deliberate indifference given that [the non-medical prison official] investigated the complaints and referred them to the medical providers who could be expected to address [plaintiff's] complaints.").

In examining the issue of whether Plaintiff has sufficiently alleged personal involvement, the Court distinguishes between those defendants who were or are employed in non-medical positions at Sing Sing—Defendants Annucci, Fischer, Capra, and Heath—and defendants who were or are employed in medical positions—Defendants Genovese and Gage.

15

**A. Defendants Annucci, Fischer, Capra, and Heath**

Plaintiff contends that Defendant Annucci "acquiesced in the denial of treatment" because he received letters from New York State Senator Tony Avella and Plaintiff himself regarding Plaintiff's dental condition, and Defendant Annucci responded to Senator Avella's letter confirming that Plaintiff was referred to a prosthodontist but Defendant D'Silva did not or would not approve the referral.  (Pl.'s Opp. at 18–19.)  Based upon the allegations in the Complaint, it is evident that Defendant Annucci did not ignore Plaintiff's letter and evidently undertook some sort of effort to investigate Plaintiff's complaints as he discerned that Defendant D'Silva would not approve the referral.  Given that Defendant Annucci is the Commissioner of DOCCS, the Court finds that his response was appropriate.  As a non-medical official, Defendant Annucci was not in a position to critically evaluate the quality of Plaintiff's medical treatment nor was he required to engage in a deep-dive investigation of the exact nature of Plaintiff's medical ailments.  The Court finds that Defendant Annucci's course of action does not establish that he acted with deliberate indifference towards Plaintiff and dismisses Plaintiff's claim against Defendant Annucci.

The factual allegations against Defendant Fischer, former Commissioner of DOCCS, are nearly identical to those against Defendant Annucci; in short, Defendant Fischer received correspondence from Senator Avella regarding Plaintiff and responded to that letter.  For the same reasons as stated above, the Court dismisses Plaintiff's claim against Defendant Fischer.

Similarly, as to Defendants Capra and Heath, Plaintiff asserts that their personal involvement stems from their receipt of written and in-person complaints from Plaintiff, as well as their written responses to Plaintiff's letters.  (Pl.'s Opp. at 19.)  Plaintiff concedes that Defendant Capra informed Plaintiff that he would speak with Defendant Gage—a medical doctor

16

at Sing Sing—about Plaintiff's condition.  (Compl. ¶ 54.)  Additionally, in response to a letter from the Legal Aid Society sent on Plaintiff's behalf, Defendant Heath wrote to Plaintiff that the dental staff addressed his concerns by furnishing him with a night guard.  (*Id*. ¶ 67.)  There is no evidence that these defendants ignored Plaintiff's complaints; instead, the allegations are clear that they responded to Plaintiff's letters.  Both Defendant Capra and Defendant Heath, as non-medical officials at Sing Sing, acted in an appropriate manner by deferring to the judgment of medical staff to properly treat Plaintiff's dental issues.  *See Mateo*, 682 F. Supp. 2d at 430 (determining no personal involvement when a "supervisor forwarded a complaint or grievance to another official for handling") (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997); *Ramos v. Artuz*, No. 00-cv-0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001) (superintendent lacked personal involvement where he forwarded inmate's complaint letters to appropriate subordinates and advised plaintiff of his actions)).  Because "prison superintendents receive large numbers of letters from inmates," it is permissible for them to "'delegate subordinates to handle them.'" *Mateo*, 682 F. Supp. 2d at 430 (quoting *Walker v. Pataro*, No. 99-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002)).  Therefore, the Court dismisses the claims against Defendant Capra and Defendant Heath.

### B.  Defendants Genovese and Gage

With respect to Defendant Genovese and Defendant Gage, Plaintiff contends that their receipt of letters regarding Plaintiff's dental issues constitutes personal involvement.  (Pl.'s Opp. at 21.)  As stated above, "the receipt of letters or grievances, by itself, does not amount to personal involvement."  *Mateo*, 682 F. Supp. 2d at 430 (collecting cases).  Plaintiff further appears to argue that Defendant Genovese and Defendant Gage were, by virtue of their positions as Facility Health Services Directors, responsible for ensuring that a prosthodontist examined

Plaintiff. (Pl.'s Opp. at 21.) However, an individual defendant's supervisory role does not automatically translate into that defendant's personal involvement. *Ayers*, 780 F.2d at 210. Furthermore, as Defendants point out, practically speaking, Defendants Genovese and Gage are *medical* doctors, not dentists, and would not have been involved in the treatment of Plaintiff's dental issues. (Defs.' Mot. at 11, n. 6.) On Plaintiff's pleadings, the Court concludes that Defendant Genovese and Defendant Gage lack personal involvement. Accordingly, the claims against them are dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's claims against Defendant Dawson, Defendant Viereckl-Prast, Defendant Annucci, Defendant Fischer, Defendant Capra, Defendant Heath, Defendant Genovese, and Defendant Gage and DENIED with respect to Plaintiff's claims against Defendant Willim and Defendant Jacobson. Defendants Willim and Jacobson are directed to file an answer within 30 days hereof. The parties are directed to appear for an initial pre-trial conference on March 24, 2016 at 10:45 am. Defendants are directed to appear in person. Defendants' counsel shall make arrangements with the appropriate correctional facility for Plaintiff to appear via telephone conference. Parties are further directed to submit a completed case management plan. The Court respectfully directs the Clerk to terminate the motion at ECF No. 41.

Dated:   January 25, 2016                                    SO ORDERED:
         White Plains, New York

                                              _____
                                                     NELSON S. ROMÁN
                                                 United States District Judge

18